**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14–cv–03228–REB–KMT

ANTHONY AMATO, an individual, and
AMEGA SCIENTIFIC CORPORATION, a New Jersey corporation,

    Plaintiffs,

v.

MESA LABORATORIES, INC., a Colorado corporation,

    Defendant.

**ORDER CONCERNING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

**Blackburn, J.**

The matters before me are (1) the **Motion To Dismiss the Complaint** [#16][1] filed by the defendant on January 20, 2015; and the corresponding **Recommendation of United States Magistrate Judge** [#29] filed August 14, 2015. The plaintiffs filed objections [#30] to the recommendation and the defendant filed a response to the objections [#33].

As required by 28 U.S.C. § 636(b), I have reviewed *de novo* all portions of the recommendation to which objections have been filed, and have considered carefully the recommendation, objections, and applicable case law. I approve and adopt the recommendation in part, respectfully reject the recommendation in part, sustain the objections of the plaintiff in part, and overrule the objections in part.

---

[1] "[#16]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

The defendant seeks dismissal of certain claims in the complaint for failure to state a claim on which relief can be granted. I summarize here the relevant factual allegations in the complaint [#1]. The factual allegations are described in greater detail in the recommendation [#29]. Plaintiff Anthony Amato founded Amega Scientific Corporation, which also is a plaintiff. Amega produced products and provided services related to centralized environmental monitoring systems. In April 2013, John Sullivan, the Chief Executive Officer of defendant Mesa Laboratories, Inc., approached Mr. Amato on behalf of Mesa with an offer to purchase Amega. Over the course of the next seven months, Mr. Sullivan and other Mesa representatives discussed and negotiated the structure of the proposed purchase of Amega by Mesa. During the negotiations, Mr. Sullivan and Mesa's Vice President, Glenn Adriance, stated that a key element of Mesa's post-acquisition plan was for Mr. Amato to serve as Mesa's Director of Environmental Sales. Purportedly, this key element of the post-acquisition plan was based on the industry knowledge and longstanding customer relationships of Mr. Amato.

Ultimately, the parties came to an agreement which was memorialized in three separate but related contracts. The acquisition was completed on November 6, 2013, under the terms of these three agreements. Under the Acquisition Agreement, Mesa acquired 100 per cent of Amega's assets in exchange for an up-front payment of ten million dollars, the assumption of certain Amega liabilities, a future payment of one million dollars, subject to adjustment for certain losses (Holdback Amount), and a future earn-out payment calculated under a separate agreement. The earn-out amount is recited in the Acquisition Agreement as part of the consideration for the Acquisition Agreement. The Acquisition Agreement specifies that the employment of Mr. Amato by

2

Mesa is at-will employment.

The Earn-Out Agreement provided that an earn-out payment would be calculated based on the revenues of the Mesa total environmental monitoring business for the three-year period from November 6, 2013, through November 5, 2016. Amega would be entitled to this earn-out amount. Under the Earn-Out Agreement, Mesa is required to use its commercially reasonable best efforts to grow, market, and develop its environmental monitoring business during the Earn-Out Period.

The Stock Option Agreement provides that Mr. Amato had the right to exercise the certain stock options so long as he was in the continuous employment or service of Mesa from November 6, 2013, to the date of the exercise of the Option. Under the terms of the Stock Option Agreement, Mr. Amato was not permitted to exercise any stock options within the first two years after the Stock Option Agreement was executed, and he could not exercise all of the options until after November 6, 2017.

Mr. Amato commenced his employment with Mesa on November 6, 2013. His employment was terminated by Mesa on January 24, 2014. Mr. Amato alleges he was terminated without notice or cause.

## I.  FRAUD PLEADING

In its motion to dismiss, Mesa contends the allegations in the complaint are not sufficiently specific to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to set forth the who, what, when, where, and how of the alleged fraud. Stated differently, the plaintiff must state the time, place, and contents of the false representations, the identity of the party making the false statements, and the consequences thereof. **U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah**, 472 F.3d 702, 727 (10th Cir. 2006).

The plaintiffs plead a state law fraud claim in their First Claim for Relief.  In their Second Claim for Relief, the plaintiffs plead a fraud claim under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)(5) of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.  The magistrate judge recommends that the motion to dismiss both fraud claims be granted because the plaintiffs have not alleged a representation by Mesa or its representatives that Mr. Amato would become a long-term employee of of Mesa.  In addition, the magistrate judge concludes that, in light of the at-will employment provision in the Acquisition Agreement, Mr. Amato has not alleged facts which support his contention that he relied reasonably on a representation that he would be a long-term Mesa employee.

### A.  Claim One - Fraud

Pleading their state law fraud claim, the plaintiffs allege that prior to the Purchase Date, Mesa represented that:

> a) Amato would become a long-term top-level management employee of Mesa with the responsibility of directing and overseeing Mesa's sales efforts in the centralized monitoring systems market; b) as the Director of Environmental Sales, Amato would likely earn substantial commissions on top of his base salary; c) as the Director of Environmental Sales, Amato would have a direct role in ensuring that Mesa's growth met the benchmark required for Amato to earn the maximum earn-out of $10 Million under the Earn-Out Agreement; and d) Amato would have the right under the Stock Option Agreement to exercise his option to purchase up to 10,000 shares of Mesa's common stock at a favorable purchase price.

*Complaint* [#1], ¶ 45.  The magistrate judge concluded that Mr. Amato did not allege any representation by Mesa that Mr. Amato would be a long-term employee of Mesa.  I agree.  The complaint does not include a specific allegation of such a representation by Mesa.  In addition, the complaint does not include a specific allegation of a representation that Mr. Amato likely would earn substantial commissions.  The

Acquisition Agreement presents that possibility, but neither the agreement nor the alleged representations paint that possibility as likely. Similarly, there is no allegation of a representation that Mr. Amato necessarily or likely would have the right to exercise his stock options. Rather, the agreements and alleged representations present that as only a possibility. Finally, Mr. Amato does not allege specifically any representations that Mr. Amato necessarily would have a direct role in ensuring that the maximum benchmarks in the Earn-Out Agreement would be met.

Even if the plaintiffs had alleged specifically such representations by Mesa, these representations would not be actionable as fraud. "(O)ne of the essential elements of fraud and deceit is that there be a false representation of a material fact, which fact either exists in the present or has existed in the past; and, conversely, that a mere expression of an opinion in the nature of a prophecy as to the happening or non-happening of a future event is not actionable." **Leece v. Griffin**, 371 P.2d 264, 265, 150 Colo. 132, 135 (Colo. 1962). In the context of the agreements at issue here, representations that Mr. Amato would be a long-term employee, would likely earn substantial commissions, would reach the Earn-Out benchmarks, or would be able to exercise stock options all constitute expressions of opinion about the future, not misrepresentations of past or present fact. As pled specifically in paragraph 45 of the complaint, the fraud claim of the plaintiffs must be dismissed for failure to state a claim on which relief can be granted. Thus, I approve and adopt the recommendation of the magistrate judge that the First Claim for Relief be dismissed under Fed. R. Civ. P. 12(b)(6).

In their objection [#30], the plaintiffs focus on the alleged repeated representations of Mr. Sullivan and Mr. Adriance, high officials of Mesa, that, due to Mr.

Amato's industry knowledge and valuable long-standing customer relations, "a key element of Mesa's post-acquisition plan was that Amato would serve as a top-level employee of Mesa after the acquisition, specifically as the Director of Environmental Sales." *Complaint*, ¶ 13. The plaintiffs allege various statements by Mr. Sullivan and Mr. Adriance, including dates and individuals making certain statements, which fed this alleged misrepresentation. They allege further that

> prior to the Purchase Date, Mesa knowingly misrepresented its intent to retain Amato in a capacity that would allow him to direct and oversee Mesa's sales of continuing monitoring systems after the acquisition and exercise his Options under the Stock Option Agreement. Axiomatically, Mesa also knowingly misrepresented the value of the Consideration Amato accepted in exchange for selling Amega's assets to Mesa.

*Complaint* [#1], ¶ 42. According to the plaintiffs, Mesa did not intend to retain Mr. Amato no matter how Mr. Amato performed as an employee of Mesa. Obviously, if, before the Purchase Date, Mesa knew it would not continue its employment of Mr. Amato through the first year following the Purchase Date, then Mesa knew the Earn-Out Agreement and Stock Option Agreement were worthless to the plaintiffs.

Conceivably, these alleged misrepresentations of the intent of Mesa as it existed before the contracts were consummated could support a fraud claim. These alleged misrepresentations are misrepresentations of existing fact - the intent of Mesa - and not predictions of the future. But in specifying the basis for their state law fraud claim in paragraph 45 of the complaint, the plaintiffs do not rely on such misrepresentations as a basis for their fraud claim. Rather, they rely on alleged misrepresentations which are not actionable as fraud. The plaintiffs may not properly re-plead this claim by citing different misrepresentations in their objections.

### B. Claim Two - Securities Fraud

The same fraud pleading requirements are applicable to the securities fraud claim alleged in the Second Claim for Relief.  In this claim, the plaintiffs specify a different alleged misrepresentation as the basis for the claim of securities fraud.  They allege that "at the time it entered into the Stock Option Agreement with Amato, Mesa intended to terminate Amato's employment prior to the vesting date of Amato's right to purchase Options under the Stock Option Agreement."  *Complaint* [#1], ¶ 57.  "Accordingly, Mesa knowingly misrepresented the value of the securities transferred to Amato in the Stock Option Agreement."  *Id.*, ¶ 58.  "Mesa used the Stock Option Agreement, which it knew would be rendered worthless, as a fraudulent means to induce Amato and Amega to transfer 100 per cent of Amega's assets to Mesa and enter into the Asset Acquisition Agreement and Earn-Out Agreement."  *Id.*, ¶ 59.

As discussed above, the alleged misrepresentation of the intent of Mesa when it entered in to the agreements is a misrepresentation of material present fact which is actionable as fraud.  In the complaint, the who, what, when, where, and how of the statements made to undergird this misrepresentation are alleged adequately.  The factual allegations stated in the Second Claim for Relief plausibly suggest an entitlement to relief on the basis of securities fraud.  Thus, respectfully, I reject the recommendation of the magistrate judge that the motion to dismiss be granted as to the Second Claim for Relief.

## II.  GOOD FAITH & FAIR DEALING

In their Third Claim for Relief, the plaintiffs allege a breach of the implied covenant of good faith and fair dealing, citing two factual bases.  First, they allege Mesa violated the covenant when Mesa intentionally misrepresented material facts which gave Mr. Amato a distorted understanding of the consideration which is the basis of the

7

three agreements. *Complaint* [#1], ¶ 64. Second, they allege Mesa violated the covenant when it terminated "Amato without cause prior to his ability to purchase any shares of stock under the Stock Option Agreement." *Id.*, ¶ 65. They allege also that this sudden, arbitrary, and unreasonable termination prevented Mr. Amato from "receiving the reasonable expectations he bargained for" in the three agreements. *Id.*, ¶ 66.

As noted by the magistrate judge, the duty of good faith and fair dealing "applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." **Amoco Oil Co. v. Ervin**, 908 P.2d 493, 498 (Colo. 1995). It does not govern pre-contractual negotiations or representations. *Id*. "The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party. However, it will not contradict terms or conditions for which a party has bargained." *Id*. "Whether a party acted in good faith is a question of fact which must be determined on a case by case basis." *Id*. at 499.

Correctly, the magistrate judge concludes that this claim fails to the extent it is based on alleged pre-contractual negotiations or misrepresentations by Mesa, as alleged in paragraph 64 of the complaint. The allegations in paragraph 64, even if true, do not state a claim for violation of the covenant of good faith and fair dealing. On this issue, I approve and adopt the recommendation of the magistrate judge.

The magistrate judge notes also that Colorado does not recognize a covenant of good faith and fair dealing in employment contracts. Viewing the agreements at issue here as an employment agreement, the magistrate judge recommends that the good faith and fair dealing claim be dismissed for failure to state a claim. In addition, the

magistrate judge notes the at-will employment provision in the Acquisition Agreement and concludes that the plaintiffs seek to alter that contractual provision via this claim.

Respectfully, I disagree with these two conclusions. The Acquisition Agreement contains an employment agreement, but it is not purely an employment agreement. It also is an acquisition agreement. The Earn-Out Agreement and Stock Option Agreement are tied to the Acquisition Agreement, but they are not purely employment agreements either. The at-will employment provision gave Mesa discretion over its manner of performance under all three contracts. The plaintiffs allege Mesa acted in bad faith in exercising that discretion. As to the non-employment aspects of all three agreements, this allegation is sufficient to plausibly suggest an entitlement to relief on the basis of a breach of the covenant of good faith and fair dealing. Respectfully, I reject the recommendation of the magistrate judge that the motion to dismiss be granted as to the Third Claim for Relief to the extent that claim is based on the allegation that Mesa acted in bad faith in exercising its discretion under the agreements.

### III. BREACH OF CONTRACT

In the complaint, the plaintiffs allege a claim for breach of contract based on deductions made by Mesa in payment of the Holdback Amount due under the Acquisition Agreement. There is no real dispute that this part of the breach of contract claim, paragraphs 70 to 74 of the **Complaint** [#1], state a claim for breach of contract.

In paragraph 75, the plaintiffs allege misrepresentation of the intentions of Mesa in performing the contract and distortion of the value of the earn-out and stock option agreements. In that context, the plaintiffs allege, the termination of Mr. Amato constitutes a breach of contract. To the extent the breach of contract claim is based on the termination of the employment of Mr. Amato, I agree with the magistrate judge that

the allegations in the complaint do not state a claim for breach of contract. Explicitly, the termination of Mr. Amato is permitted under the terms of the Acquisition Agreement. Thus, the termination of Mr. Amato does not breach any explicit provision of any of the contracts.

Finally, the plaintiffs allege Mesa has breached the provision of the Earn-Out Agreement which requires Mesa to use commercially reasonable efforts to grow, market, and develop the business. The plaintiffs allege Mr. Amato was the only management-level Mesa employee who had a firsthand understanding of the centralized monitoring systems market and was the only management-level employee who had personal contacts and relationships with customers in the centralized monitoring systems industry. According to the plaintiffs, when Mesa terminated Mr. Amato less than three months after the acquisition, Mesa breached its duty under the Earn-Out Agreement to use commercially reasonable efforts to grow, market, and develop business. I agree with the magistrate judge that this portion of the breach of contract claim is sufficient to state a claim on which relief can be granted.

## IV.  UNJUST ENRICHMENT

The magistrate judge recommends dismissal of the Fifth Claim for Relief, a claim of unjust enrichment. The plaintiffs concede this claim should be dismissed. I concur and will dismiss this claim.

## V.  CONCLUSION & ORDERS

As pled, particularly in paragraph 45 of the **Complaint** [#1], the First Claim for Relief does not include allegations of fact that are sufficient to state a claim for fraud on which relief can be granted. As to this claim, I approve and adopt the recommendation of the magistrate judge and grant the motion to dismiss.

In contrast, the allegations in support of the Second Claim for Relief are sufficient to state a claim for securities fraud under § 10(b) of the Exchange Act and Rule 10(b)(5). As to this claim, I respectfully reject the recommendation of the magistrate judge and deny the motion to dismiss.

The claim for breach of the covenant of good faith and fair dealing alleged in the Third Claim for Relief must be dismissed to the extent it is based on alleged pre-contractual negotiations or misrepresentations by Mesa. On this point, I approve and adopt the recommendation of the magistrate judge and grant the motion to dismiss. However, I respectfully reject the recommendation that the balance of this claim be dismissed for failure to state a claim.

I approve and adopt the recommendation concerning the Fourth Claim for Relief. This breach of contract claim must be dismissed to the extent it is based on the termination of the employment of Mr. Amato. Otherwise, the motion to dismiss is denied as to this claim.

Finally, the motion to dismiss is granted as to the Fifth Claim for Relief, the unjust enrichment claim.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Recommendation of United States Magistrate Judge** [#29] filed August 14, 2015, respectfully is rejected to the extent the magistrate judge recommends granting the motion to dismiss as to

- The Second Claim for Relief - securities fraud; and

- The Third Claim for Relief - breach of the covenant of good faith and fair dealing - to the extent this claim is not based on alleged pre-contractual negotiations or misrepresentations by Mesa;

2. That under Fed. R. Civ. P. 12(b)(6), the **Motion To Dismiss the Complaint**

[#16] filed by the defendant on January 20, 2015, is denied to the extent the defendant seeks dismissal of

- The Second Claim for Relief - securities fraud;

- The Third Claim for Relief - breach of the covenant of good faith and fair dealing - except for that portion of this claim which is based on alleged pre-contractual negotiations or misrepresentations by Mesa; and

- The Fourth Claim for Relief - breach of contract - except for that portion of this claim which is based on the termination of the employment of Mr. Amato;

3. That otherwise, I approve and adopt the **Recommendation of United States Magistrate Judge** [#29] filed August 14, 2015;

4. That under Fed. R. Civ. P. 12(b)(6), the **Motion To Dismiss the Complaint** [#16] filed by the defendant on January 20, 2015, is granted as to

- The First Claim for Relief;

- The Third Claim relief to the extent this claim is based on alleged pre-contractual negotiations or misrepresentations by Mesa;

- The Fourth Claim for relief to the extent this claim is based on the termination of the employment of Mr. Amato; and

- The Fifth Claim for Relief; and

5. That consistent with these orders, the objections [#30] of the plaintiffs are sustained in part and overruled in part.

Dated September 14, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

12